IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TREONDOUS ROBINSON (B-41303), ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Case No. 08 C 5393 | |
| ) | | |
| ) | Judge Virginia M. Kendall | |
| SALVADOR GODINEZ, et al., ) | | |
| ) | | |
| Defendants. ) | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Treondous Robinson, currently an inmate at the Menard Correctional Center, filed this 42 U.S.C. § 1983 action against Cook County Jail officials and doctors, claiming that they acted with deliberate indifference to his recurring left knee injury, chronic right heel pain following his 2002 surgery, and a recurring problem with genital warts. More specifically, he alleges that the Defendants responded too slowly to his requests for medical attention and the medical treatment he received was inadequate.

Currently before this Court is a motion for summary judgment filed by the Defendants. Plaintiff has responded, and the Defendants have replied. For the following reasons, the Court grants the motion.

**I. STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining the existence of a genuine issue of material fact, the court

construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

If the moving party meets its burden of showing that there are no issues of material fact and that he is entitled to a judgment as a mater of law, the non-moving party must "go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *See Anderson*, 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000).

When addressing a summary judgment motion, the Court derives the background facts from the parties' Local Rule 56.1 Statements, which assist the court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Because Plaintiff is proceeding *pro se*, the Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by N.D. Ill. Local Rule 56.2. (R. 69.) The notice explains the consequences of failing to properly respond to a motion for summary judgment and to the undisputed material facts in the movant's Local Rule 56.1 Statement. (*Id.*) A litigant's failure to respond to a statement of fact in a Local Rule 56.1 Statement results in the court considering the

uncontroverted statement admitted. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The court may also disregard responses that do not properly cite to the record or that offer only evasive denials. *Cichon v. Exelon Generation Co., L/L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

In the present case, the Defendants filed their Rule 56.1 Statement (R. 68) and provided notice to Plaintiff of his need to respond. (R. 69.) Plaintiff responded to the motion for summary judgment, (R. 72), but did not respond the Defendants' Rule 56.1 Statement. The court may thus consider the Defendants' Rule 56.1 Statement's facts admitted, to the extent they are supported by the record. *Raymond*, 442 F.3d at 608. With these standards in mind, the court considers the evidence of this case.

## II.   FACTS

This case involves Plaintiff's inability to obtain adequate medical treatment for his knee, his ankle, and his genital warts in 2008. Plaintiff's claims begin with the reinjury of his knee on April 17, 2008. The evidence shows the following.

In 2002, Plaintiff Treondous Robinson had ankle surgery and had four screws and a plate placed in his right ankle. (R. 68, Defs. Rule 56.1 Statement ¶ 16, citing Exh. 3, Pl. 2009 Depo. 21[1].) In 2006, while he was incarcerated at the Cook County Jail, he injured or reinjured his left knee while playing basketball. (R. 68, Defs. Rule 56.1 Statement ¶ 27, citing Exh. 4, Pl. 2010 Depo. 7.) Plaintiff states that he heard his knee pop and that he was treated in an emergency room. (R. 68, Exh. 4, Pl. 2010 Depo.7-8.) He contends that he was told that he tore his ACL, but no MRI was taken, and he was given only a brace. (R. 68, Rule 56.1 Statement ¶¶ 27-28; *see also* R. 68, Exh. 4, Pl. 2010 Depo. 9-11.)

---

[1] Plaintiff was deposed twice: on June 17, 2009, and June 11, 2010. (R. 68, Exhs. 2 & 4.)

In 2006 he was released from Cook County Jail ("CCJ"), but was reincarcerated in October 2007 and returned to CCJ. (R. 68, Exh. 4, Pl. 2010 Depo. 7-8.) When he entered CCJ, he was not wearing orthopaedic shoes, but instead wore high top gym shoes. (R. 68, Rule 56.1 Statement ¶ 17.) His high tops were confiscated, and he was given regular tennis shoes. (*Id.* ¶ 18). He states that he had constant pain in his Achilles heel when he walked. (*Id.* ¶¶ 19-20.)

On Apiril 17, 2008, Plaintiff hurt his left knee again. The record contains two versions of how he hurt his knee. According to a grievance he filed on April 17, 2008, he injured his knee when getting out of his top bunk. (*Id.*, ¶ 21, citing Exh. 2 (copy of 4/17/08 Grievance.)) According to his deposition, Plaintiff's knee popped while he was playing basketball or wiggled as he walking down stairs. (*Id.*, ¶ 22, citing Exh. 3, Pl. 2009 Depo. 22; *see also* Exh. 4, Pl. 2010 Depo. 8.)

Whichever way he hurt his knee, on April 17, 2008, Plaintiff filed a grievance stating (1) he injured his knee, (2) he informed Officer Lee that his knee was swollen and he could not bend it, and (3) he needed medical attention. (R. 68, Rule 56.1 Statement, ¶ 21, citing Exh. 2, copy of 4/17/08 Grievance.) The bottom of the grievance form indicates that it was received on April 23, 2008, by an officer or social worker named Smith; the upper right portion of the grievance indicates that it was referred to "medical staff;" and the second page of the grievance states that a "sick call" appointment was scheduled for April 29, 2008. (R. 68, Exh. 2, copy of 4/17/08 Grievance.)

Plaintiff includes copies of several grievances with his response to the summary judgment motion. On April 18, 2008, he filed a grievance, stating that he went to the jail's dispensary and informed staff of pain in his knee and ankle. (R. 72, Pl. Response, Exh. F.) Plaintiff did not state in the grievance that he injured his knee the day before. Instead, the 4/18/08 grievance states that he previously had ankle surgery; that his jail-issued shoes were too big and had no arch support, causing

pain when he walked; and that he had genital warts. (*Id.*) Like the April 17th grievance, the April 18th grievance form indicates that it was received by Officer Smith on April 23, 2008, that it was processed as a medical request, and that it was referred to medical staff. (*Id.*)

On April 20, 2008, Plaintiff submitted a health service request form, which sought medical attention for a variety of reasons: an eye exam, a dental exam, a genital problem, and knee, ankle, and back pain. (R. 68, Rule 56.1 Statement ¶ 23; *see also* R. 68, Exh. 5, p.9 (copy of 4/20/08 med. request form)). The request did not mention an injury to his knee on April 17th. (*Id.*)

Plaintiff was seen by Dr. Maarghoob Khan on April 29, 2008. (*Id.*, ¶ 24; *see also* R. 68, Exh. 6, Dr. Khan Aff. ¶ 9.) Plaintiff complained of knee and ankle pain and was sent to Cermak Hospital the following day (April 30, 2008) for x-rays of his left knee and right ankle. (R. 68, Rule 56.1 Statement ¶¶ 24-25.) He was also given pain medication (Naprosyn 500mg) to reduce swelling, and an Ace bandage for knee support. (*Id.* ¶¶ 25-26; R. 68, Exh. 6, ¶ 9.) The x-rays revealed Mild Degenerative Disease in the knee and patella, indicating the beginning of arthritis, but no evidence of joint effusion indicating an ACL tear. (R. 68, Exh. 6, ¶ 10; *see also* R. 68, Exh. 5, p.11 (copy of radiologist's report).) X-rays of the ankle revealed a properly healed fracture with good position and alignment and a compression plate. (R. 68, Exh. 6, ¶ 10; *see also* R. 68, Exh. 5, p.10.) The x-rays showed nothing that would cause pain. (R. 68, Exh. 6, ¶ 10.)

On May 14, 2008, Plaintiff filed another grievance, in which he stated that he saw a doctor on April 29, 2008, and had x-rays on April 30th for a knee injury and Achilles heel pain, but that he was still experiencing pain. (R. 72, Exh. C.) Plaintiff requested to see the doctor again and receive regular shoes with better arch support. (*Id.*)

Plaintiff was next seen by Dr. Khan on May 20, 2008, at which time Plaintiff reported that his

knee pain was improving, (R. 68, Exh. 6, ¶ 10.) Plaintiff complained of genital warts at that time. (*Id.*) Dr. Khan prescribed Aldura cream 5% to be applied three times a week. (*Id.*; R. 68, Rule 56.1 Statement, ¶ 37.) The record also contains a grievance from Plaintiff dated May 20, 2008, in which he complained of chronic back and neck pains and requested to the see a doctor to obtain an extra pillow and mattress. (R. 72, Exh. E.)

At a follow-up exam on June 24, 2008, Plaintiff had no complaints. (R. 68, Rule 56.1 Statement ¶ 41, citing R. 68, Exh. 6, Dr. Khan Aff. ¶ 11.) On July 15, 2008, Plaintiff submitted another grievance, in which he stated that he had a medical exam during the last week of June 2008, that certain medical ailments were not attended to, and that Social Worker Smith had not responded to Plaintiff's previous grievance. (R. 72, Exh. D.) Plaintiff had another follow-up exam with Dr. Khan on September 9, 2008, and again had no complaints. (R. 68, Exh. 6, ¶ 9.)

On October 6, 2008, Plaintiff was seen by Physician's Assistant Kevin Sims. Sims scheduled Plaintiff for a doctor's exam on October 17, 2008. (R. 68, Rule 56.1 Statement, ¶ 42.) The medical records indicate that he was examined on October 17, 2008, at which time he was again prescribed Naprosyn, an Ace Bandage, and Aldura cream. (*Id.*, ¶ 43, citing R. 68, Exh. 6, Dr. Khnn Aff. ¶ 13.) Plaintiff was next seen on January 2, 2009, again complaining of knee pain and genital warts. He was prescribed Motrin, told to continue the Ace bandage, as well as Aldura cream for his genital warts. (R. 68, Rule 56.1 Statement, ¶ 43; R. 68, Exh. 6, Dr. Khan Aff. ¶ 14.) According to Dr. Khan, there was no evidence of swelling in Plaintiff's knee at the January 2nd visit. (R. 68, Exh. 6, Dr. Khan Aff. ¶ 14.) Plaintiff was next seen on March 27, 2009, at which time he was told to continue Aldura cream for his warts. (*Id.*, ¶ 15.) Dr. Khan states in his affidavit that, in his professional opinion, Aldura cream is an

appropriate treatment for genital warts and Naproxen is an appropriate treatment for joint swelling. (*Id.*, ¶¶ 16, 18.)

Plaintiff was transferred from Cook County Jail to an Illinois prison in April 2009. (R. 68, Exh. 3, Pl. 2009 Depo. 25.) At that time, he had been using the topical Aldura cream for his genital warts for about nine months, but it never worked. (*Id.*; R. 68, Rule 56.1 Statement ¶¶ 31-32.)

### III. DISCUSSION

Plaintiff's amended complaint names the following parties as Defendants: Sheriff Tom Dart, Executive Director Salvador Godinez, Superintendent Salazar, Superintendent Thomas, Dr. Maarghoob Khan, and Physician's Assistant Sims. (R. 48, Amended Complaint.) According to Plaintiff, Dart and Godinez should have implemented better procedures to address inmates' medical emergencies and medical needs. (R. 48, Amended Compl., p.1; R. 68, Exh. 3, Pl. 2009 Depo.17.) Superintendents Salazar and Thomas allegedly did not address Plaintiff's grievances, (R. 48, Amended Compl., p.2), and Dr. Khan and Sims allegedly provided inadequate treatment for Plaintiff's genital warts, knee, and heel conditions. (*Id.*, p.2; *see also* R. 68, Exh. 3, Pl. 2009 Depo.19 (although Plaintiff's complaint is unclear as to whether Dr. Khan and Sims are named for their alleged lack of treatment for his knee and ankle, he states in his deposition that he named for all three conditions)). Plaintiff does not indicate whether he is suing each Defendant in his individual or official capacity; however, the evidence shows that the Defendants are entitled to summary judgment for both types of claims.

### A. Deliberate Indifference Standards for Individual and Official Capacity Claims

The Constitution requires prison and jail officials to take reasonable measures to guarantee the safety of inmates, including providing them with adequate medical care. *Farmer v. Brennan*,

511 U.S. 825, 832 (1994). The Eighth Amendment's proscription against cruel and unusual punishment applies to prisoners, while the Fourteenth Amendment's due process protections apply to pretrial detainees, which Plaintiff was at the time his claims arose. The analysis for claims under both amendments, however, are similar and courts apply the same legal standards for prisoners and pretrial detainees. *Minix v. Canarecci*, 597 F.3d 824, 830-31 (7th Cir. 2010).

To sustain a § 1983 claim against the Defendants in their individual capacities, Plaintiff must be able to establish: (1) that he had objectively serious medical conditions; (2) that the Defendants acted with deliberate indifference to them; and (3) that their indifference caused him an injury. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). The condition need not be life-threatening; rather, a condition that would result in further significant injury or unnecessary pain if not treated is sufficient. *See Gayton*, 593 F.3d at 620.

A defendant acts with deliberate indifference only if he both (1) had actual, subjective knowledge of the risk to the inmate's health, and (2) disregarded that risk. *Id.* An official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Higgins v. Corr. Med. Serv. of Ill., Inc.*, 178 F.3d 508, 510 (7th Cir. 1999)).

With respect to claims against the Defendants in their official capacities, Plaintiff must show that they maintained a policy or custom that infringed upon his constitutional rights. *Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010). If Plaintiff cannot identify a formal policy that is

unconstitutional, he may show deliberate indifference through "a series of bad acts," i.e., a widespread or repeated occurrence of events that creates an inference that municipal officials were aware of and condoned the misconduct of their employees. *Id.*

### B. Plaintiff's Claims Against Dart, Godinez, Salazar, and Thomas

#### 1. Individual-Capacity Claims

It is clear that Plaintiff's claims against Sheriff Tom Dart and Executive Director Salvador Godinez do not involve their personal knowledge of his medical needs. Plaintiff's amended complaint does not allege that Dart or Godinez knew of Plaintiff's complaints or grievances. (R. 51, Amended Compl., p.1.) Furthermore, Plaintiff acknowledges in his deposition that he named them because they are in "the chain of command" and the medical needs of inmates "should be their responsibility." (R. 68, Exh. 3, Pl. 2009 Depo. 17.)

The evidence also indicates that Superintendents Salazar and Thomas did not have personal knowledge.[2] Plaintiff acknowledged in his deposition that he did not talk to the superintendents about his medical conditions. (R. 68, Exh. 3, Pl. 2009 Depo, 15-16.) Plaintiff contends that his grievances were referred to them, (*see* R. 72, Pl. Response, 5), but the majority of Plaintiff's grievances state that they were referred to "medical staff." (R. 72, Exhs. A-M) (upper right corner of grievances show to whom the grievance was referred). Only three of Plaintiff's grievances were referred to "Division 9 Supt." (*Id.*, Exhs A, B, L (grievances from 12/19/08, 12/5/08, and 11/14/08 respectively)). Of these grievances, only Plaintiff's November 14, 2008, grievance sought

---

[2] The record indicates that the only non-medical officers who had knowledge of Plaintiff's medical needs were Officer Lee, who Plaintiff allegedly informed immediately following his April 17, 2008, injury, (*see* R. 68, Exh. 2, copy of 4/17/08 grievance), and Officer Smith, who received and processed Plaintiff's grievances as medical requests. (*Id.*; *see also* R. 72, Exhs. E-G.) However, Plaintiff names neither Lee nor Smith as Defendants.

treatment for his recurring Achilles heel pain. (*Id.*, Exh. L.) The December 2008 grievances complained about a strip search and searches of Plaintiff's cell. (*Id.*, Exhs. A and B.) The November 14, 2008, grievance, which is almost illegible, appears to complain about chronic back and heel pain possibly related to Plaintiff not being able to obtain better shoes. (*Id.*, Exh. L.) As noted by the Defendants, (R. 79, Reply, 2), Plaintiff does not provide the second page of the grievance, and has not shown what actions may have been taken with it. (R. 72, Exh. L.)

Other than Exhibit L of Plaintiff's Response, the only evidence that Superintendents Salazar and Thomas had actual knowledge Plaintiff's grievances is the notation at the bottom of each grievance stating that copies the grievance are provided to the following parties: Program Services, C.R.W., the Detainee, and "Division/Supt./Office." (*See* R. 72, Exhs. A-M, preprinted last line of grievance.) The notation at the bottom of each grievance, however, appears to be for record-keeping purposes, and it would unreasonable to infer that Salazar and Thomas had actual knowledge from the fact that they were one of several parties that received a carbon copy.

Even if Plaintiff could establish that Salazar and Thomas' receipt of a copy of every grievance indicated that they had actual knowledge, the evidence still shows that there was no deliberate indifference, given that the grievances were referred to medical staff. Plaintiff's April 17 and 18, 2008, grievances complaining about his need for medical attention were referred to medical staff and an appointment was made with a doctor for April 29, 2008. (R. 68, Exh. 2; R. 72, Exhs. F & G.) Plaintiff's next grievance on May 14, 2008, and May 20, 2008, about his need for medical attention were also submitted to medical staff and Plaintiff saw a doctor on May 20, 2008. (R. 72, Exhs. C & E (copies of grievances); R. 68, Exh. 6, ¶ 10 (Dr. Khan's affidavit) (it appears that Plaintiff submitted his 5/20/08 grievance before his doctor visit that same day, given that the

5/20/08 grievance does not mention that he had just had a visit with a doctor).) With respect to Plaintiff's November 14, 2008, grievance seeking medical attention for chronic knee and ankle pain, which was referred to a superintendent, Plaintiff had a doctor visit on January 2, 2009. (R. 72, Exh. L; R. 68, Exh. 6 ¶ 14.) At that visit, Dr. Khan noted Plaintiff's medical complaints, reported that there was no swelling, and prescribed Motrin and continued use of an Ace bandage for knee support. (R. 68, Exh. 6 ¶ 14.)

The evidence thus demonstrates that, if Superintendents Salazar and Thomas were made aware of Plaintiff's grievances, they were also made aware that the grievance had been processed as a request, referred to medical staff, and an appointment had been made. (*See, e.g.,* R. 68, Exh. 2, copy of 4/17/08 grievance.) Such evidence demonstrates that there was no deliberate indifference. *See Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009) (a division of duties is proper, such that a complaint examiner's referral of a grievance seeking medical attention to the facility's medical staff in accordance with the examiner's duties cannot be the basis of liability with respect to the medical staff's handling of the medical request). The evidence thus shows that Plaintiff cannot succeed on claims against Dart, Godinez, Salazar, and Thomas in their individual capacities.

### 2. Official-Capacity Claims

Nor may Plaintiff proceed with official-capacity claims against these Defendants. An official-capacity claim must establish an unconstitutional policy or custom. Plaintiff points to no express policy of not adequately tending to inmates' medical requests, and it appears that the only basis for official-capacity claims are his contentions of a widespread practice of such inaction. As

noted above, however, almost all of Plaintiff's grievances seeking medical attention were referred to medical staff and doctor appointments were made.

Plaintiff contends that there was a significant delay with receiving treatment. (R. 72, p.1-2.) However, only Plaintiff's April 17, 2008, grievance that his knee swelled following an injury that day could be read as notice of a condition needing immediate attention. Even if this grievance provided notice of an emergency, one incident of a delay, by itself, does not establish an unconstitutional custom. "Proof of a single incident of unconstitutional activity is not sufficient" to establish an unconstitutional custom , "unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003) (quoting, *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir.1995)). Other than the time between Plaintiff's April 17, 2008, injury and his April 29, 2008, doctor visit, the record contains no evidence that jail officials routinely ignored inmates' medical emergencies or medical needs. In fact, the referral of Plaintiff's grievances to the medical staff and the subsequent setting up of appointments with a doctor noted above, demonstrate the opposite.

The evidence, at best, demonstrates only one day (April 17, 2008) where Plaintiff may not have received immediate medical treatment for an injury that occurred that day, which is insufficient to establish a custom or policy of constitutionally inadequate medical care by jail officials. It is thus clear that Plaintiff cannot establish liability by the jail officials (Tom Dart, Salvador Godinez, and Superintendents Thomas and Salazar) in their official capacities, as well as their individual capacities. Summary judgment is thus warranted for these Defendants.

### C. Plaintiff's Claims Against Dr. Khan and Physician Assistant Sims

Nor can Plaintiff succeed with his claims against Dr. Khan and Physician Assistant Sims. As noted above, Plaintiff must prove: (1) he suffered a serious medical need, (2) the Defendants acted with deliberate indifference to that need, i.e., they were actually aware of Plaintiff's medical condition and they consciously disregarded the need to provide adequate medical attention; and (3) the Defendants' disregard caused Plaintiff an injury. *Gayton*, 593 F.3d at 620. Neither negligence nor medical malpractice give rise to a constitutional violation. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Norfleet*, 439 F.3d at 396.

The evidence in this case shows that neither Dr. Khan nor Sims acted with deliberate indifference. Dr. Khan saw Plaintiff on April 29, 2008; prescribed Naprosyn for swelling and pain; provided an Ace bandage for knee support; and ordered that x-rays be taken the following day. (R. 68, Rule 56.1 Statement ¶¶ 24-26.) The x-rays, which were read by a radiologist at Cermak, showed only mild degenerative disease and the beginning of arthritis, but no joint effusion or ACL tear. (R. 68, Exh. 5, p.11.) With respect to the ankle, x-rays showed proper alignment with the plate such that there was no evidence of anything that would cause pain. (R. 68, Exh. 5, p.10-11; Exh. 6 ¶ 10.) Plaintiff then had a follow-up examination three weeks later on May 20, 2008, where he reported that his knee pain was improving, and he was prescribed topical medication, Aldura 5% cream, for his genital warts. (R. 68, Rule 56.1 Statement, ¶¶ 37, 40.) Plaintiff again saw Dr. Khan on June 24, 2008, and again on September 9, 2008, and had no complaints on those visits. (*Id.*, ¶ 41.) On

October 6, 2008, Plaintiff saw Physician Assistant Sims, who scheduled an appointment with a doctor on October 17, 2008. (*Id.*, ¶ 42.) Plaintiff continued to see doctors at the jail on October 17, 2008, January 2, 2009, and March 27, 2009, at which times doctors noted Plaintiff's complaints of knee pain and genital warts, but also noted that there was no swelling in the knee. On these occasions, Plaintiff was prescribed either Naprosyn or Motrin and Aldura cream 5%. (*Id.*, ¶ 43-44.)

The treatment Plaintiff received by Dr. Khan and Sims described above establishes no deliberate indifference by either Defendant. Plaintiff may have disagreed with the course of treatment he received, which could possibly support a claim of negligence or malpractice. But, the evidence demonstrates clearly he cannot prove that their decisions were so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *See Norfleet*, 439 F.3d at 396.

Accordingly, the evidence shows that there are no issues of material fact with respect to Plaintiff's claims against Dr. Khan and Physician Assistant Sims and that, like the claims against the other Defendants, summary judgment is proper in favor of Dr. Khan and Sims.

## **CONCLUSION**

For the reasons stated in this opinion, the Defendants' motion for summary judgment [66] is granted. Plaintiff's claims are denied. Judgment is to be entered in favor of the Defendants pursuant to Fed. R. Civ. P. 56. This case is terminated.

ENTER: _____
Virginia M. Kendall
United States District Judge

DATE: February 3, 2011